## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SHEILA ROTTINGHOUSE,                      Case No. 1:11-cv-882
        Plaintiff,                        Spiegel, J.
                                          Litkovitz, M.J.

        vs.

COMMISSIONER OF                           **REPORT AND**
SOCIAL SECURITY,                          **RECOMMENDATION**
        Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in

opposition (Doc. 14), and plaintiff's reply memorandum. (Doc. 15).

### I. Procedural Background

Plaintiff filed applications for DIB and SSI in November 2007, alleging disability since

August 8, 2007, due to chronic back pain, a broken hip, arthritis, vasculitis, Raynaud's disease

and depression. Plaintiff's applications were denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative

Law Judge (ALJ) Christopher B. McNeil. Plaintiff, a medical expert (ME), and a vocational

expert (VE) appeared and testified at the ALJ hearing. On April 26, 2010, the ALJ issued a

decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of

the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The [plaintiff] has not engaged in substantial gainful activity since August 8, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: vasculitis, arthritis, fibromyalgia, colitis, and depressive disorder, not otherwise specialized (sic) (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: she can occasionally lift not more than 10 pounds, frequently lift less than 10 pounds, and she can push or pull not more than 10 pounds with hand or foot controls. She can sit, stand, and walk not more than 6 hours each in an 8-hour workday, in a job that requires not more than occasional fingering (fine manipulation) and feeling (skin receptors), avoiding even moderate exposure to extreme heat or cold, wetness, humidity, and vibration; in a job that does not require making complex work-related decisions, does not involve strict production standards or schedules, and requires not more than superficial interaction with supervisors, coworkers, and the general public.

6. The [plaintiff] is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1964 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and  416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 8, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-24).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2]Plaintiff's past relevant work was as a meat packer.  (Tr. 23, 186).

4

(1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ."   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole.   *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.   Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."   *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ' s decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving

weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in determining plaintiff's residual

functional capacity (RFC); (2) the ALJ erred in assessing plaintiff's credibility; and (3) the ALJ

erred by failing to adequately explain why plaintiff did not meet or equal a listed impairment.

The Court will first address plaintiff's Listings argument.

### 1.  The ALJ did not err in finding that plaintiff did not meet or equal a listed impairment in the Listings of Impairments.

Plaintiff contends the ALJ's finding that she does not meet or equal a Listing is

not substantially supported as the ALJ did not provide an adequate rationale in his decision.

Plaintiff further argues that the evidence of record supports a finding that she meets or equals

Listings 1.02(B), 4.12, and 12.04.   (Doc. 11 at 12-14).   However, plaintiff has only developed

5

arguments regarding Listings 4.12 and 12.04 and her claim regarding Listing 1.02(B) is limited to

the following: "When all the evidence of record is reviewed, it shows a severe deficit in physical

functioning and mental functioning. It demonstrates the [p]laintiff met or functionally equaled

[Listing 1.02(B).]" *Id.* at 14. Plaintiff's failure to present a developed argument regarding her

claim that she meets or equals Listing 1.02(B) amounts to a waiver. *See McPherson v. Kelsey,*

125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived."). Thus, the

Court's review is limited to whether the ALJ erred in finding that plaintiff did not meet or equal

Listings 4.12 or 12.04.[1]

A plaintiff's impairment must meet every element of a Listing before an ALJ may

conclude that she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. §

404.1520; *Duncan v. Sec'y of HHS,* 801 F.2d 847, 855 (6th Cir. 1986). The regulations provide

that in making a medical equivalence determination, the ALJ will "consider the opinion given by

one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R.

§ 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed

enough to enable the [ALJ] to make a disability determination rests with the [plaintiff]."

*Landsaw v. Sec'y of HHS,* 803 F.2d 211, 214 (6th Cir. 1986); *King v. Sec'y of HHS,* 742 F.2d

968, 974 (6th Cir. 1984). It is not sufficient to almost establish the conditions of a Listing. *See,*

---

[1] The undersigned notes that plaintiff's Listing argument fails to identify how plaintiff actually
meets any criteria of the cited Listings aside from asserting the ALJ was not sufficiently specific in finding
otherwise. Plaintiff's Listing argument is more properly viewed as a rehash of her claims that the ALJ
erred in weighing the medical opinion evidence and assessing plaintiff's credibility. Notably, plaintiff
limited the scope of her Listings claims in her prehearing memorandum to her assertion that she meets or
equals Listing 12.04 and the memorandum contains no mention of Listing 1.02(B) or 4.12. *See* Tr. 265-66.
However, given that the ME provided testimony regarding Listing 4.12 and as plaintiff's Statement of
Errors cites to this specific evidence, the Court finds that plaintiff's bare-bones argument regarding Listing
4.12 is sufficiently developed and should be determined on the merits and not dismissed on procedural

6

e.g ., *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (ALJ's decision affirmed where medical evidence "almost establishes a disability" under Listing).

> Listing 4.12 pertains to arterial disease, such as vasculitis, and provides as follows:
>
> Peripheral arterial disease, as determined by appropriate medically acceptable imaging (see 4.00A3d, 4.00G2, 4.00G5, and 4.00G6), causing intermittent claudication (see 4.00G1) and one of the following:
>
> **A.** Resting ankle/brachial systolic blood pressure ratio of less than 0.50.
>
> OR
>
> **B.** Decrease in systolic blood pressure at the ankle on exercise (see 4.00G7a and 4.00C16-4.00C17) of 50 percent or more of pre-exercise level and requiring 10 minutes or more to return to pre-exercise level.
>
> OR
>
> **C.** Resting toe systolic pressure of less than 30 mm Hg (see 4.00G7c and 4.00G8).
>
> OR
>
> **D.** Resting toe/brachial systolic blood pressure ratio of less than 0.40 (see 4.00G7c).

Plaintiff argues the ALJ erred by finding plaintiff did not meet or equal Listing 4.12, asserting that the ME, Chukwuemeka Ezike, M.D., M.P.H., "all but conceded" that she did. (Doc. 11 at 14). Plaintiff's assertion is unsupported by the evidence. At the hearing, the ME explicitly testified that plaintiff did not have an impairment or combination of impairments that either met or equaled a listed impairment. (Tr. 47). The ME testified that in reaching this opinion, he looked at peripheral vascular disease, Listing 4.12, and stated that it was focused on disease involving the lower extremities whereas plaintiff's symptoms were mostly in the upper extremities. *Id.* Notwithstanding this testimony, plaintiff asserts the ME "testified plaintiff

---

grounds.

substantially equal (sic) the requirements of [L]isting 4.12." (Doc. 15 at 1, citing Tr. 60).

Plaintiff's argument mischaracterizes the ME's testimony and is not well-taken.

After the ME provided the above testimony, plaintiff's counsel questioned him further on whether plaintiff met or medically equaled a listed impairment. The exchange is as follows:

Q [plaintiff's counsel]: Do you believe, while she does not meet a listing, [plaintiff] - - whether or not she would substantially equal a listing?

A [ME]: *If I had evidence* that she is unable to walk, like a block due to pain, I can confidently say that she's *more likely* to equal 4.12. *But I do not have that evidence.*

(Tr. 59-60) (emphasis added). Contrary to plaintiff's contention, the ME clearly testified that the record evidence did not support a conclusion that plaintiff met or equaled Listing 4.12. Insofar as plaintiff argues the ME ignored evidence of pain and swelling in both her upper and lower extremities and her diagnoses of Raynaud's Phenomenon and Berger's Disease, *see* Doc. 11 at 12, this contention is contradicted by the ME's testimony. The ME testified that he reviewed these records and considered these diagnoses and findings prior to reaching his conclusion. *See* Tr. 43. Aside from being dissatisfied with the outcome of the ME's review of the medical record evidence, plaintiff has failed to provide any basis for reversing the ALJ's finding that she did not meet or equal Listing 4.12. Accordingly, the ALJ's finding should be affirmed.

The Court acknowledges that the ALJ has a duty to articulate the rational underlying his findings, *see* 42 U.S.C. § 405(b)(1), and that his decision does not specifically discuss whether plaintiff meets Listing 4.12 aside from his determination that she does not have any physical impairment that meets or equals a Listing as "[n]o treating or examining physician has indicated

8

that [plaintiff] has an impairment equivalent in severity to the criteria of any listed impairment in the Listings of Impairments." (Tr. 18). However, the ALJ's finding is not legally insufficient given the lack of record evidence showing (or any attempt by plaintiff to show) how she meets or equals Listing 4.12. *See Price v. Heckler*, 767 F.2d 281 (6th Cir. 1985).

Plaintiff further argues that the medical evidence regarding her mental impairment, depression, supports a finding that she meets or medically equals Listing 12.04. For the following reasons, the undersigned finds the ALJ's determination is substantially supported by the record.

Listing 12.04 governs affective disorders, such as depressive disorders. The required level of severity for Listing 12.04 is met when both the "paragraph A" and "paragraph B" criteria of the listing are satisfied, or when the criteria of "paragraph C" are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. As plaintiff does not argue the ALJ erred in failing to find that she meets or medically equals the paragraph A criteria, the Court's review is limited to the ALJ's determinations regarding the paragraph B and C criteria.

To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. *Id.*, § 12.00 (C). Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each

9

lasting for at least 2 weeks. *Id.*, § 12.00(C)(4). To satisfy the "paragraph C" criteria, there must be a medically documented history of a chronic affective disorder of at least two years which causes more than minimal limitation on the plaintiff's ability to do basic work activities accompanied by one of the following: repeated episodes of decompensation, each of extended duration; a residual disease process that results in such marginal adjustment that a minimal increase in mental demands would be predicted to cause the plaintiff to decompensate; or a history of one or more years of the plaintiff being incapable of functioning outside of a highly supportive living arrangement. *Id.*, § 12.04.

The ALJ found that plaintiff's severe depressive disorder does not meet or medically equal the criteria of Listing 12.04 because it does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. The ALJ found that plaintiff has mild restriction in activities of daily living; mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and has experienced no episodes of decompensation of extended duration. (Tr. 18). The ALJ also considered the "paragraph C" criteria and found that the record evidence failed to establish that plaintiff has repeated episodes of decompensation, each of an extended duration; a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause plaintiff to decompensate; or that plaintiff is completely unable to function independently outside of her home. (Tr. 19).

In her relatively cursory argument, plaintiff claims the ALJ erred by relying on the opinion evidence of record that plaintiff has no marked limitations sufficient to meet the

paragraph B criteria of Listing 12.04; selectively citing to the record and ignoring evidence of significant problems; and failing to further develop the record to resolve inconsistencies between the opinions of the consultative examining psychiatrist and state agency reviewing psychologist and the opinion of plaintiff's social worker. (Doc. 11 at 12-14). For the following reasons, the undersigned finds that plaintiff's arguments are without merit and that the ALJ's finding that plaintiff does not meet or medically equal Listing 12.04 is substantially supported.

First, as discussed further in connection with plaintiff's second assignment of error, the ALJ complied with all applicable rules and regulations in weighing the medical opinion evidence. The ALJ based his finding on the opinion of nonexamining state agency psychologist, David Dietz, Ph.D., who completed a Psychiatric Review Technique form in September 2008. *See* Tr. 18, citing Tr. 906-19. Dr. Dietz opined that plaintiff had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of an extended duration. (Tr. 916). Dr. Dietz further determined that the evidence did not establish the presence of the "C" criteria. (Tr. 917).[2] Insofar as plaintiff contends the ALJ should have adopted the limitations provided by Mary Calkins, LISW, plaintiff's treating social worker, *see* Tr. 1070-75, the undersigned disagrees. The ALJ's decision to discount Ms. Calkins' opinion that plaintiff's depression precludes her from engaging in substantial gainful activity as she

---

[2]Dr. Dietz also completed a Mental RFC assessment in September 2008 based on plaintiff's mental health records in which he made substantially similar findings. *See* Tr. 920-04 (Dr. Dietz found plaintiff was moderately limited in her abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to respond appropriately to changes in a work setting. Plaintiff appeared capable of completing some moderately complex tasks that do not involve strict production standards or schedules and requires no more than superficial interaction with others.).

11

would be unable to maintain regular attendance due to pain (Tr. 1072) is substantially supported. *See infra*, Section II(D)(2).

Second, while plaintiff asserts the ALJ "engaged in selective records review citing only improvement notes [and] ignoring notes of significant problems," a review of the ALJ's decision demonstrates that this assertion is incorrect. In discussing the evidence related to plaintiff's mental impairment, the ALJ cited to records containing both positive and negative findings. *See, e.g.*, Tr. 20 (ALJ cited to plaintiff's subjective reports of engaging in limited activities of daily functioning and having limited concentration); Tr. 22, citing Tr. 557 (ALJ noted that plaintiff reported caring for her grandchild). Notably, plaintiff does not identify what evidence the ALJ purportedly ignored in making his Listings determination aside from citing to evidence which would ostensibly support a finding of marked limitations in two paragraph B criteria. *See* Doc. 11 at 12, citing Tr. 830, 1036-69, 1070-75. Not only does the evidence cited by plaintiff not support his contention, but the ALJ adequately addressed this evidence in his decision. Plaintiff cites to the final page of the report completed by Kevin W. Eggerman, M.D., the consultative examining psychiatrist. (*Id.*, citing Tr. 830). However, Dr. Eggerman opined that plaintiff's ability to understand, remember, and carry out short and simple instructions is not limited; her ability to understand, remember, and carry out detailed instructions is mildly limited; her ability to make judgments on simple work-related decisions is minimally limited; her ability to interact appropriately with the public, supervisors, and co-workers is moderately limited as is her ability to respond appropriately to changes in routine; and her ability to respond to work pressures in a usual work setting is moderately to markedly limited. (Tr. 830). As Dr. Eggerman opined that plaintiff had no marked limitations in the paragraph B criteria of Listing

12

12.04, plaintiff's contention that this evidence supports a finding that she meets or equals the Listing is without merit. Plaintiff also cites to mental health treatment records, *see* Doc. 11 at 12, citing Tr. 1036-69, but she fails to identify how these records support a finding of marked limitations. Further, a review of these records reveals that they consist primarily of plaintiff's subjective reports, therapy goals, and diagnoses of depression. *See*, *generally*, Tr. 1036-69. Thus, the undersigned concludes that this evidence fails to support plaintiff's argument that the ALJ erred by finding she did not meet the paragraph B criteria of Listing 12.04. Plaintiff also asserts that Ms. Calkins' report supports a finding of marked limitations in the paragraph B criteria. However, Ms. Calkins specifically opined that plaintiff had only mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, none of which would support the level of severity required under the paragraph B criteria. (Tr. 1073). Moreover, Ms. Calkins' opinion is limited to a finding that plaintiff is precluded from work because her pain would cause frequent absences. *See* Tr. 1073-74. Because the undersigned finds the ALJ reasonably discounted this evidence, as discussed *infra*, Ms. Calkins' report does not suffice to demonstrate the marked limitations required by the Listing. Given these findings, the undersigned cannot conclude that the evidence of record supports a finding that plaintiff meets or medically equals Listing 12.04.

Third, plaintiff's argument that the ALJ had a duty to develop the record to resolve conflicts between the opinion evidence fails to acknowledge the fact that there was no conflict. As noted above, no examining or reviewing psychiatric specialist, including Ms. Calkins, opined that plaintiff had marked limitations such that her depression met or medically equaled Listing

13

12.04. Accordingly, it is unclear why the ALJ would have any need to further develop this evidence and as the plaintiff has cited no authority supporting this unfounded proposition, her argument is not well-taken.[3]

The ALJ's decision reflects a thorough review of the record and substantial evidence supports his conclusion that plaintiff's mental impairment does not satisfy Listing 12.04. Accordingly, the ALJ's finding that plaintiff's psychological impairment does not meet the Listings should be upheld.

2. The ALJ did not err in formulating plaintiff's RFC.

Plaintiff contends the ALJ erred by giving "great weight" to the opinions of consultative examining psychiatrist Dr. Eggerman and state agency reviewing psychologists, Dr. Deitz and Douglas Pawlarszyk, Ph.D. As an initial matter, the undersigned notes that the ALJ gave only "some weight" to Dr. Deitz's opinion and made no determination as to what weight to give to Dr. Pawlarszyk. *See* Tr. 23. Plaintiff further asserts the ALJ erred by assigning only "little weight" to the opinion of Ms. Calkins, her social worker at Centerpoint, as Ms. Calkins has an ongoing treatment relationship with plaintiff and is, therefore, in a better position to provide an accurate portrayal of how plaintiff's mental impairment limits her. For the following reasons, plaintiff's second assignment of error is not well-taken and should be overruled.[4]

The applicable regulations lay out the three types of acceptable medical sources upon

---

[3] In connection with this argument, plaintiff asserts the "ME [and] VE was (sic) at a loss to explain or understand the totality of the medical evidence when questioned on cross-examination." (Doc. 11 at 14, citing Tr. 87-90). The Court notes that the testimony cited by plaintiff regards the VE's testimony in response to plaintiff's counsel's questioning. A review of this testimony provides no support for plaintiff's contention that the VE was "at a loss" while testifying. Moreover, it is entirely unclear why the VE's testimony is relevant in determining whether the ALJ's Step Three findings are supported by the medical evidence.

[4] As plaintiff's RFC argument is limited to her mental impairment, the Court's analysis of the ALJ's RFC determination will not include a discussion of plaintiff's physical impairments.

14

whom an ALJ may rely on: treating source, nontreating source, and nonexamining source.  20 C.F.R. §§ 404.1502, 416.902.  A treating source opinion on the nature and severity of a claimant's impairments is generally entitled to the most weight, and the Social Security Administration must give "good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  This "good reasons" requirement applies only to treating sources.  *Id.* at 876.  "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1))[5] (internal citations omitted).  The ALJ must consider the following factors in determining how much weight to afford a nontreating medical source's opinion: the length and nature of the treatment relationship, the evidence that the physician offered in support of his opinion, the consistency of the opinion with the record as a whole, and whether the physician was practicing a specialty.  *See* 20 C.F.R. 404.1527(c), 416,927(c); *Ealy*, 594 F.3d at 514.

Here, the ALJ gave "great weight" to the opinion of Dr. Eggerman, noting that it was based on his examination of plaintiff and objective testing, signs, and findings; was not contradicted by any treating source; and was consistent with the credible portions of plaintiff's reported activities of daily living.  (Tr. 23).  The ALJ gave "some weight" to Dr. Dietz's Mental RFC assessment and Psychiatric Review technique, noting that his opinions were based on objective findings, namely Dr. Eggerman's consultative examination findings.  (Tr. 23, citing

---

[5] 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012.  The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and

15

Tr. 906-22).   Both Dr. Eggerman and Dr. Dietz opined that plaintiff had no more than moderate limitations in her activities of daily living, social functioning, or ability to maintain concentration, persistence, or pace.   *See* Tr. 830, 916, 920-21.   Dr. Dietz further opined that plaintiff is "capable of compl[e]ting some moderately complex tasks that do not involve strict production standards or sche[du]les and requires no more than superficial interaction with others."   (Tr. 922).   Based on these opinions, the ALJ found that plaintiff had the RFC to:

> Perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with [physical and environmental] limitations . . . in a job that does not require making complex work-related decisions, does not involve strict production standards or schedules, and requires not more than superficial interaction with supervisors, coworkers, and the general public.

(Tr. 19).   The ALJ gave "little weight" to Ms. Calkins' opinion that plaintiff's depression limits her abilities to perform work and would result in absences of more than four times a month because Ms. Calkins is "not an acceptable medical source and her opinion is not supported by the medical evidence of record and is inconsistent with the [plaintiff's] activities of daily living reported elsewhere."   (Tr. 23, citing 1070-75).

Plaintiff contends the ALJ erred by disregarding Ms. Calkins' opinion in contravention of the applicable regulations.   (Doc. 11 at 7, citing 20 C.F.R. §§ 404.1513, 416.913).   Specifically, plaintiff contends that Ms. Calkins' opinion as plaintiff's social worker may be used by the ALJ to assess plaintiff's level of disability.   *Id.*   The undersigned agrees that opinion evidence from licensed social workers, such as Ms. Calkins, may be used to determine the severity of plaintiff's impairments.   *See* 20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3).   However, plaintiff's argument

---

416.927(d) and are now found at §§ 404.1527(c) and 416.927(c).

that the ALJ erred by disregarding Ms. Calkins' opinion is contradicted by the ALJ's decision

and, further, his determination to give it less weight than the opinions of Dr. Eggerman and Dr.

Dietz is substantially supported.

      While plaintiff claims the ALJ did not consider Ms. Calkins' opinion (Doc. 11 at 7), a

review of the ALJ's decision reveals that this contention is incorrect.  The ALJ acknowledged

and discussed Ms. Calkins' opinion regarding plaintiff's limited ability to perform work-related

functions given her depression and pain, which would result in frequent absences.  *See* Tr. 23.

Clearly, the ALJ considered Ms. Calkins' opinion but chose to give it "little weight" in light of

the starkly contrasting opinions of the psychiatric specialists.  *See* 20 C.F.R. §§ 404.1527(c)(5),

416.927(c)(5) (noting appropriateness of giving "more weight to the opinion of a specialist about

medical issues related to his or her area of specialty than to the opinion of a source who is not a

specialist.").  Further, the ALJ determined that the opinions of Dr. Eggerman and Dr. Dietz were

due more weight as they were better supported by and consistent with the objective evidence and

the credible portion of the subjective evidence regarding plaintiff's activities of daily living.  *See*

20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (opinions that are supported by medical signs

and laboratory findings are generally due more weight and "the more consistent an opinion is

with the record as a whole, the more weight [the ALJ] will give to that opinion.").  As the ALJ

noted, the opinions of Dr. Eggerman and Dr. Dietz are supported by Dr. Eggerman's examination

findings, are consistent with each other, and are consistent with Ms. Calkins' opinion that

plaintiff had only mild restrictions in activities of daily living; moderate difficulties in

maintaining social functioning; mild difficulties in maintaining concentration, persistence, or

pace; and no episodes of decompensation.  (Tr. 1073).

Further, to the extent plaintiff contends Ms. Calkins' opinion is better supported by the record evidence, the only evidence cited by the social worker in support of her opinion is to plaintiff's subjective complaints. *See* Tr. 1070 (when asked to describe the clinical findings supporting her opinion, Ms. Calkins stated "[Plaintiff] is depressed due to physical problems not being adequately addressed, having some memory issues dating back four years – about the time physical problems began. Also has history of abuse in family and deceased husband was an alcoholic. [Plaintiff] has a lot of anger."). The ALJ is not required to accept medical opinions from mental health providers based solely on an individual's subjective complaints and that are not supported by clinical observations. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th Cir. 2010). The record demonstrates that the ALJ properly considered Ms. Calkins' qualifications and treatment relationship with plaintiff, the evidence supporting and contradicting her opinion, and the consistency of her opinion with other record evidence as required by the applicable rules and regulations. Further, as discussed below, the ALJ's determination that plaintiff's subjective reports are less than fully credible is substantially supported by the record; thus, the ALJ reasonably gave greater weight to the opinions of psychiatric specialists whose findings were based on objective examination results and not just plaintiff's subjective reports. The undersigned finds that the ALJ's decision to discount Ms. Calkins' opinion is supported by substantial evidence.

Lastly, plaintiff argues that by discounting Ms. Calkins' opinion, the ALJ improperly devised his own RFC, noting that the "ALJ, as a layperson, may not substitute his own opinions for those of medical doctors." (Doc. 11 at 9). Plaintiff's argument is wholly contradicted by the record. As noted above, the ALJ formulated plaintiff's RFC based in part on Dr. Dietz's

18

mental RFC assessment wherein Dr. Dietz opined that plaintiff is "capable of compl[e]ting some moderately complex tasks that do not involve strict production standards or sche[du]les and requires no more than superficial interaction with others." (Tr. 922). The ALJ adopted Dr. Dietz's limitations almost verbatim in limiting plaintiff to work "that does not require making complex work-related decisions, does not involve strict production standards or schedules, and requires not more than superficial interaction with supervisors, coworkers, and the general public." (Tr. 19). The ALJ clearly adopted the opinion of Dr. Dietz and did not create or substitute his own opinion in formulating plaintiff's RFC. Accordingly, plaintiff's second assignment of error should be overruled.

3. The ALJ did not err in assessing plaintiff's credibility.

For her final assignment of error, plaintiff contends the ALJ erred in discounting her credibility. Plaintiff asserts the ALJ erroneously relied on inconsistencies in plaintiff's reported activities of daily living in finding that plaintiff's subjective reports of pain and limitations are not fully credible. Further, plaintiff identifies various objective medical evidence ostensibly supporting her subjective reports which she claims "support a portion of her symptoms." (Doc. 11 at 11).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.

1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers*, 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Substantial evidence supports the ALJ's determination that plaintiff's subjective statements regarding the severity of her impairments are not credible to the extent they are inconsistent with his finding that she is capable of performing a limited range of sedentary work. In making this determination, the ALJ noted throughout his decision the various ways in which plaintiff's statements were inconsistent and unsupported by the objective and clinical evidence of record.

First, the ALJ identified multiple inconsistencies between plaintiff's testimony and her statements to her medical providers. *See* Tr. 21, citing Tr. 64-71 (plaintiff testified that she is in constant chronic pain due to her impairments), Tr. 804, 889-91, 930, 934, 954, 958 (at follow up

20

visits to Freiberg Orthopaedics & Sports Medicine plaintiff reported that "medications and treatment have helped improve the quality of life and psychosocial functioning."). The ALJ further noted that while plaintiff testified that she sleeps throughout the day and has difficulty concentrating, she denied increased sleepiness, drowsiness, or confusion when questioned by medical providers. (Tr. 21, citing Tr. 77-79, 930, 934, 938, 942, 950). The ALJ noted the inconsistency between plaintiff's testimony that she frequently urinates on herself and her repeated denials of loss of bladder control at doctors' visits. (Tr. 21, citing 79, 930, 934, 938, 942, 950). The undersigned also notes that plaintiff's reports of not being able to concentrate (Tr. 233) are inconsistent with her testimony that she reads and watches television both for three hours a day. (Tr. 77-78).

Second, the ALJ noted that plaintiff's subjective allegations about the nature and severity of her pain were not consistent with the objective medical evidence. The ALJ specified that plaintiff's testimony and reports that she was unstable, had difficulty walking, and was unable to hold anything due to pain were inconsistent with objective findings upon physical examination that plaintiff had "no instability, change in baseline gait, or changes in strength of the upper or lower extremity." (Tr. 21, citing Tr. 64, 68-69, 71, 889-91, 930, 934, 938, 962, 967). The ALJ further found that plaintiff's testimony regarding her chronic, severe back and hip pain, *see* Tr. 68-69, 71, was inconsistent with the objective medical evidence of record. *See* Tr. 21, citing Tr. 810 (November 2007 examination yielded largely normal results with no back tenderness except at the sciatic notches bilaterally), Tr. 849 (state agency reviewing physician James Gahman, M.D., noted that plaintiff's back pain was not radicular and that straight leg raising and log

21

rolling tests were negative)[6], Tr. 896 (MRI results in November 2007 revealed no herniation, "[t]he only abnormality appreciated is a prominent L4, L5/S1 intervertebral disc"), Tr. 811, 814-15 (imaging of plaintiff's hips revealed plaintiff was healing from a left hip fracture and plaintiff's medical providers opined the fracture was healing nicely with mild callus formation with well-placed and fixated screws and plates and plaintiff had no swelling and normal range of motion of the hip).

Third, the ALJ determined that plaintiff's credibility was weakened by record evidence demonstrating that she refused treatment for her impairments and was noncompliant with her medical providers' instructions. *See* Tr. 21, citing Tr. 356, 549 (plaintiff refused her treating physician's suggested treatment for vasculitis). The ALJ specified that despite being told that "it is imperative she stop smoking," plaintiff continued to smoke up to a pack a day as of the date of the ALJ hearing. (Tr. 21, citing Tr. 77, 552). *See also* Tr. 762 (when treated for a dry u-shaped eschar (dead tissue) on her left ring finger, plaintiff was told the eschar could be a result of a combination of smoking and her impairments or related to smoking alone and she was "given every encouragement to stop smoking").

Fourth, the ALJ identified numerous examples of inconsistencies in plaintiff's reports of activities of daily living, noting that plaintiff's testimony was exaggerated in severity and contradicted by other evidence of record. Tr. 21-22, citing Tr. 77-79 (plaintiff testified that she generally stays at home, relies on her daughter to drive her places and shop and cook for her, and spends her days reading, watching television, and sleeping), Tr. 557 (plaintiff reported that she was caring for her grandchild in July 2007), Tr. 1057 (plaintiff reported ongoing problems with

---

[6] Dr. Gahman's notation is consistent with treatment notes from Freiberg Orthopaedics & Sports Medicine. *See, e.g.*, Tr. 896, 899.

22

her physical impairments but stated that "[she has] a life now."). *See also* Tr. 828 (plaintiff reported to Dr. Eggerman that she take her daughter to school and takes care of her grandson and that she is able to drive and go to the store by herself).

Lastly, the ALJ stated that plaintiff's credibility was lessened by the reports of Dr. Eggerman and Dr. Pawlarczyk. The ALJ cited to Dr. Eggerman's observations that plaintiff is "at times manipulative, and clearly exaggerates behaviors." Tr. 22, citing Tr. 828. Dr. Eggerman noted that plaintiff was given three tries to register three simple words in order to test her short-term memory and that she acted like she couldn't remember them, which was inconsistent "with other findings in the interview and reflects manipulativeness." Tr. 828. The ALJ also cited to Dr. Pawlarczyk's opinion that plaintiff "was uncooperative at [Dr. Eggerman's examination]. She clearly feigned having memory problems." Tr. 22, citing Tr. 845.

An ALJ's credibility determination should be affirmed where the ALJ considers the plaintiff's subjective complaints in light of the record as a whole and adequately explains his decision to not fully credit the alleged limitations with citations to the record. *See Infantado v. Astrue*, 263 F. App'x 469, 476 (6th Cir. 2008). Here, the ALJ considered plaintiff's allegations in the context of the complete record. The ALJ cited to objective and clinical evidence, doctors' reports of plaintiff's manipulation and noncompliance, and plaintiff's inconsistent statements in support his finding that plaintiff's subjective allegations were not credible to the extent they contradicted his finding that she was able to perform a limited range of sedentary work. The ALJ adequately explained his credibility determination and supported his finding with citations to record evidence such that it is substantially supported.

23

Plaintiff argues the ALJ focused too much on plaintiff's household activities in assessing her credibility, citing to the Seventh Circuit's advisement that ALJ's should not place "undue weight on a [p]laintiff's household activities in assessing the [p]laintiff's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). Plaintiff's argument is misplaced. *Mendez* involved an ALJ's finding that the plaintiff was not "particularly credible" based solely on reported activities of daily living, namely that she was able to care for her four children. *Id.* at 360-63. The Seventh Circuit reversed the ALJ's credibility determination as it was not supported by the record evidence which demonstrated that the plaintiff was not caring for her children without assistance. *Id.* at 362-63. Here, however, the ALJ's credibility determination is based on far more than plaintiff's reported activities of daily living. The ALJ has cited to record evidence demonstrating that: plaintiff repeatedly makes inconsistent statements regarding her abilities and activities of daily living; plaintiff's subjective reports of pain are contradicted by objective and clinical evidence; plaintiff has repeatedly been noncompliant with doctor's advice and refused treatment; and plaintiff has been observed as manipulative and exaggerative by examining and reviewing doctors. Given the ample evidence cited and the deference due to the ALJ in making credibility determinations, the undersigned concludes the ALJ's credibility finding is substantially supported and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket docket of the Court.

Date: 2/19/13

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SHEILA ROTTINGHOUSE,                                   Case No. 1:11-cv-882
     Plaintiff,                                       Spiegel, J.
                                                       Litkovitz, M.J.
     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).


25